UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David R. Costa,
     Claimant

     v.                                    Case No. 13-cv-241-SM
                                           Opinion No. 2014 DNH 173

Carolyn Colvin, Acting Commissioner,
Social Security Administration,
     Defendant


**O R D E R**


Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, David Costa, moves to reverse or vacate the Commissioner's decision denying his applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c (collectively, the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.


For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I. <u>Procedural History</u>.

In 2010, claimant filed an applications for Disability Insurance Benefits and Supplemental Security Income benefits, alleging that he had been unable to work since July 12, 2009, due to ventricular tachycardia (status post-ICD implant), bilateral hearing loss, degenerative disk disease of the lumbar spine, degenerative changes in the left hip and knee, carpal tunnel syndrome, COPD, depression, anxiety, social phobia, and a learning disability.  That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In March of 2012, claimant, his attorney, his fiancee, and a vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Three weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

Claimant then sought review of the ALJ's decision by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court,

asserting that the ALJ's decision is not supported by substantial evidence. Claimant then filed a "Motion to Reverse" the Decision of the Commissioner (document no. 9). In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 13). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 14), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health &

Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that

his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or

> whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: July 12, 2009.  Admin. Rec. at 13.  Next, he concluded that claimant suffers from the following severe impairments: "a history of ventricular tachycardia with implanted defibrillator, bilateral sensorineural hearing loss, degenerative changes of the lumbar spine, left hip and knee, carpal tunnel syndrome, chronic obstructive pulmonary disease and a learning disability with social anxiety disorder versus depressive disorder - NOS."  Id.  Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or

medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1 of the regulations. Admin. Rec. at 15-17.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of light work.[1] Admin. Rec. at 17. He noted, however, that claimant must "avoid concentrated exposure to noise." Id. In light of those restrictions, the ALJ concluded that claimant was not capable of performing his prior work as a mechanic's helper, a construction helper, or a welding helper. Id. at 19.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, he "is capable of making a successful adjustment to

---

[1] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

other work that exists in significant numbers in the national economy." Id. at 20. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision (March 21, 2012).

**Discussion**

Claimant challenges the ALJ's decision on a number of grounds, asserting that he erred by: (1) failing to consider whether the combination of claimant's impairments meets a listing level of severity; (2) misstating, or taking out of context, claimant's activities of daily living (particularly his "reading" of the daily newspaper, mowing the lawn, and doing laundry); (3) misstating the medical opinion evidence of record; (4) failing to give sufficient weight to the testimony given by claimant's fiancee; (5) failing to consider all of claimant's impairments - in particular his carpal tunnel syndrome; and (6) failing to present the vocational expert with a hypothetical that included all of claimant's impairments.

I.   Step Three - Listing Level of Impairment(s).

At step three of the sequential analysis, claimant bears the burden of demonstrating that he suffers from an impairment or combination of impairments that meets or equals a listing in the pertinent regulations. See Torres v. Secretary of Health & Human

Services, 870 F.2d 742, 745 (1st Cir. 1989) (citing Dudley v. Secretary of Health & Human Services, 816 F.2d 792, 793 (1st Cir. 1987)). While claimant identifies his impairments - focusing in particular on his ventricular tachycardia, status post-ICD implant, and COPD - he has not shown how they (together or in combination with his other impairments) amount to a listing level impairment. See Claimant's memorandum (document no. 9-1) at 6.

The ALJ, on the other hand, specifically (and thoroughly) addressed each of claimant's impairments, Admin. Rec. at 13-15, and concluded that they did not meet a listing level - either standing alone or in combination, id. at 15-17. The court can discern no error in the ALJ's findings, which are supported by substantial evidence.

II. Claimant's Activities of Daily Living.

Claimant takes issue with the ALJ's having stated that claimant "acknowledged that he spent time reading the paper, using a computer, fishing, watching movies and playing video games." Admin. Rec. at 16. Claimant asserts that the ALJ overstated the time he spent playing video games and incorrectly reported that claimant "read" the newspaper, when he actually stated that he "looked at" the newspaper (noting that claimant has some difficulty reading and writing). See Claimant's

memorandum at 7-8.  In his "Function Report" dated September 22, 2010, claimant reported that he began each day by having coffee, looking at the paper, checking things out on line, and taking a walk.  Admin. Rec. at 220.  He repeated those statements in January of 2011.  <u>Id.</u> at 241.

     Even if the ALJ erred in construing the record evidence (he did not), such an error would have been harmless.[2]  The distinctions claimant attempts to draw are so subtle as to have little weight.  Even interpreting the record as claimant asks, it still does not support his claim that the ALJ's decision rests on less than substantial evidence.  Moreover, as the Commissioner points out, the ALJ relied on claimant's reported activities of daily living simply as part of his broader credibility determination, not as part of his assessment of claimant's RFC or as proof of claimant's ability to engage in substantial gainful activity.  <u>See</u> Admin. Rec. at 18 (listing claimant's activities and concluding that "[t]hese tasks belie the claimant's current testimony.").  <u>See generally</u> <u>St. Pierre v. Shalala</u>, 1995 WL 515515 *3 (D.N.H. May 25, 1995) ("When evaluating the subjective claims of pain it is proper and, indeed, required that the ALJ consider daily activities such as driving, walking and household

---

[2]    Parenthetically, the court notes that it was not unreasonable for the ALJ to have inferred that "looking at" the newspaper involved reading.

chores.  This allows the Secretary to juxtapose the claimant's subjective allegations of pain with the relative intensity of his daily regimen.") (citations omitted).

III. <u>Medical Opinion Evidence</u>.

Next, claimant asserts that the ALJ improperly credited the opinions of non-examining physicians (Kelvin Samaratunga, M.D., Admin. Rec. at 348-55; Burton Nault, M.D., <u>id.</u> at 408; and Michael Schneider, Psy.D., <u>id.</u> at 382-98) over those of examining physicians (Sandra Vallery, Ph.D., <u>id.</u> at 286-94; Darrell Horton, Ph.D., <u>id.</u> at 377-80; and Peter Sanfelippo, M.D., <u>id.</u> at 360-63). In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . .  When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.

20 C.F.R. § 404.1527(c)(2).  <u>See also</u> Social Security Ruling, <u>Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions</u>, SSR 96-2p, 1996 WL 374188 (July 2, 1996).  Importantly, however, there

11

is no per se rule requiring the ALJ to give controlling weight to the opinion of an examining, or even a treating source; to be entitled to such weight, a medical source's opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [cannot be] inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

    In this case, the medical opinions from the examining sources are not dramatically different from those expressed by the non-examining sources.  While claimant focuses on a few of the differences, they are not sufficient to undermine the ALJ's conclusions.  For example, claimant points to Dr. Vallery's somewhat ambiguous (and far-from-conclusive) statement that claimant "would probably have some difficulty with short and simple instructions."  Admin. Rec. at 292.  Claimant says that statement, if fully credited, would undermine his ability to perform light work.  And, he adds, the ALJ failed to adequately explain why he did not fully credit that statement.

    Dr. Vallery's complete assessment of claimant's abilities in the realm of understanding and remembering instructions reads as follows:

12

> This claimant was able to understand instructions. He
> did have problems though with memory, both on the
> Folstein Mini Mental Status Examination as well as in
> the interview where there are many dates and sequences
> of events that he could not recall with any
> specificity. He would probably have some difficulty
> with short and simple instructions which would be
> confounded by his hearing problem, and certainly would
> have difficulty with anything that was complex and
> lengthy.

Admin. Rec. at 292. Dr. Schneider, who reviewed claimant's medical records - including the report prepared by Dr. Vallery - concluded that, notwithstanding his limitations, claimant "is able to understand, remember, and carry out short and simple verbal instructions. He is not able to understand, remember and carry out more detailed ones." Id. at 398. Viewing the record evidence as a whole - including, for example, claimant's employment history and activities of daily living - the ALJ sustainably concluded that claimant's memory issues would not preclude him from remembering (and carrying out) short and simple instructions. And, he adequately explained the basis for his decision to afford substantial weight to those medical opinions he credited most heavily.

Claimant also challenges the ALJ's decision to give less than controlling weight to the opinion of Peter Sanfelippo, M.D. Dr. Sanfelippo conducted a consultative examination of claimant in March of 2011, and, based upon a physical examination of

13

claimant, a review of his medical records, and his self-reported medical history, Dr. Sanfelippo concluded that:

> Based on the evidence during the examination, the examinee is able to perform work activities which require sitting, limited standing and moving about, and very limited lifting and carrying.  He is able to handle objects.  He does have decreased hearing acuity.  He is able to speak.

Admin. Rec. at 362.  Claimant asserts that, if fully credited, Dr. Sanfelippo's opinion that he is capable of only "limited standing and moving about" would render him unable to perform "light" work.  Again, however, while there may be substantial evidence in the record to support claimant's view that he is disabled, there is also substantial evidence to support the ALJ's contrary view.  See, e.g., Admin Rec. at 220-24, 241-42, 244, 291, 317, 349, 355, 362, and 378.

IV.   Testimony from Claimant's Fiancee.

Claimant asserts that the ALJ failed to even mention testimony given at the hearing by claimant's fiancee - testimony that supported his claim to be disabled.  See Claimant's memorandum at 16 ("The ALJ failed to mention anywhere in his decision that the fiancee was present or had testified at the hearing.").  That is not correct.  In recounting claimant's testimony, the ALJ specifically noted that his "fiancee also testified and corroborated the claimant's testimony."  Admin.

Rec. at 18. Plainly, after thoroughly considering the evidence of record, the ALJ concluded that claimant's testimony, as well as that of his fiancee, overstated claimant's impairments to some degree. That was an entirely permissible conclusion for the ALJ to draw, it is supported by substantial evidence, and he was not required to address the fiancee's testimony in any greater detail. The Court of Appeals for the Seventh Circuit has addressed this very point:

> Books's brother Roland's testimony did not constitute a separate "line of evidence." Rather, it served strictly to reiterate, and thereby corroborate, Books's own testimony concerning his activities and limitations. To the extent ALJ Bartelt found Books's testimony concerning his disabling pain and physical limitations to be untenable when contrasted with his reported daily activities and the relevant medical evidence, he necessarily found Roland Books's supporting testimony similarly not credible. ALJ Bartelt, therefore, did not err by declining to address Roland's testimony specifically.

Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996). See also Lindahl v. Barnhart, 2003 WL 21994761 *6, 2003 DNH 143 (D.N.H. Aug. 21, 2003).

V. <u>Consideration of Claimant's Carpal Tunnel Syndrome</u>.

Next, claimant asserts that the ALJ's RFC determination "is internally inconsistent with the ALJ's severity findings at step 2. No explanation was offered for leaving out limitations associated with carpal tunnel syndrome." Claimant's memorandum

15

at 18.  Again, however, substantial evidence supports the ALJ's (implicit) conclusion that claimant's carpal tunnel syndrome did not substantially affect his RFC.  For example, Dr. Samaratunga opined that claimant had no manipulative limitations.  Admin. Rec. at 350.  Similarly, after examining claimant, Dr. Sanfelippo reported that claimant: "has normal grasp and squeeze with both hands.  He has full motion of all fingers, both hands, both wrists, both elbows, and both shoulders."  Id. at 362.

VI.  The ALJ's Hypothetical.

Finally, claimant challenges the hypothetical question the ALJ posed to the vocational expert.  Specifically, he asserts that if the ALJ had included all of the exertional and non-exertional limitations identified by some of the consulting physicians, he would have been found disabled.  But, it is quintessentially the role of the ALJ to review the record evidence, ascribe to each piece of evidence appropriate weight, and render his decision.  Here, as discussed above, the ALJ adequately (and supportably) explained his decision to credit some of the record evidence and discount other evidence.  As is often the situation in disability cases, there is certainly substantial evidence to support claimant's position.  But, importantly, there is also substantial evidence to support the ALJ's adverse decision.

## Conclusion

This court's review of the ALJ's decision is both limited and deferential. It is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is, in fact, disabled. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are here - the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). Consequently, while there is certainly substantial evidence in the record demonstrating that claimant suffers from some cognitive deficits, hearing loss, anxiety, and a history of ventricular tachycardia, the existence of such evidence is not sufficient to undermine the ALJ's determination that claimant is not disabled, which is also supported by substantial evidence.

Having carefully reviewed the administrative record (including the testimony of the claimant, his fiancee, and the vocational expert), as well as the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision (March 21, 2012). The ALJ's determination of claimant's RFC, his weighing of the various medical opinions of record and claimant's activities of daily living, his credibility determinations, and his hypothetical to the vocational expert are well-reasoned and supported by substantial record evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 13) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 19, 2014

cc: Janine Gawryl, Esq.
    Robert J. Rabuck, AUSA